DE MANN *v.* HYDRAULIC ENGINEERING CO

1. MASTER AND SERVANT—INDUSTRIAL ACCIDENT BOARD—EVIDENCE
   —BURDEN OF PROOF—PERSONAL INJURIES.
   While claimant, in a proceeding before the Industrial Ac-
   cident Board, is required to establish by a preponderance
   of the evidence that decedent met his death by personal
   injuries arising out of and in the course of his employ-
   ment, and the burden is not sustained if an inference
   favorable to the applicant can only be arrived at by specu-
   lation, *held,* in reviewing an award based upon the finding
   that a deceased employee met his death by falling from a
   stairway, that the evidence justified the determination
   of the accident board.[1]

2. SAME—EVIDENCE—CAUSE OF DEATH.
   Where decedent's body was found at the foot of a stairway
   when the other laborers in a building where they were
   at work were leaving at the end of the day, and he was
   in his shirt sleeves, the coat, vest, and dinner pail being
   afterwards found on the stage of the theater, where the
   men had placed their coats and dinner pails, and the
   electric lights had been turned on, where the stairs were
   not protected by a railing or partition, though no one saw
   the accident, the finding of the board in claimant's favor
   was warranted by the testimony.

3. SAME—SCOPE OF EMPLOYMENT—TERMINATION OF WORK.
   If decedent's purpose in going from the basement to the
   stage was to look after his tools, he was within the line
   of his employment; if on the other hand he was going
   for his coat and other clothing, that also was within the
   scope of his employment, as the employee is allowed a
   reasonable time, space and opportunity, both before he
   begins and after he leaves off work.

[1] Upon the question of recovery of compensation for injuries
arising out of and in the course of the employment, see note on
the subject of workmen's compensation acts, in L. R. A. 1916A,
at page 232.

4. SAME—AWARD—EXCESSIVE AMOUNT.

>   Where the testimony showed that the deceased did not
>   work at his employment during the entire year and not
>   to exceed ten months, at $2 a day, his family were not
>   entitled to more than $5 a week for the term of 300 weeks.

Certiorari to Industrial Accident Board. Submitted April 11, 1916. (Docket No. 82.) Decided September 26, 1916.

Wilhelmina De Mann presented her claim against the Hydraulic Engineering Company for compensation for the death of her husband in defendant's employ. From an order awarding compensation, respondent brings certiorari. Reversed as to amount awarded, and judgment entered.

*Stevens T. Mason,* for appellant.

*Cornelius Hoffius,* for appellee.

This is certiorari to the Industrial Accident Board for the purpose of reviewing the proceedings of that board in allowing compensation for the death of James De Mann. De Mann at the time of his death, which occurred on the 4th of August, 1914, was employed by the Hydraulic Engineering Company as a common laborer. He had been in the service of the company about two years. On the day of the accident which caused his death he had been at work in the basement of the Powers Theater Building, in Grand Rapids, connecting the water mains with the intake pipes. Other employees were working there at the same time. The building was undergoing extensive repairs, and the basement was badly torn up, and with material and débris scattered about. The tools which the workmen used were stored when not in use on the stage of the theater. It was one of the duties of De Mann to look after the tools and see that they were properly put away when the day's work was ended. De Mann

and the other workmen also left their coats and vests and their dinner pails on the stage while they were working, and ate their dinners there. A short flight of stairs led up from the basement floor to a platform where a stage door opened on the alley or arcade, and from this platform a flight of steps ascended to the stage floor. The steps leading from the basement were open and not protected by any railing or partition, and during the day, or shortly before, a large wooden beam had been temporarily placed at the head of the first flight of stairs and about four feet above the platform floor, so that it was necessary for one going from the basement to the stage to stoop underneath the beam. At about five minutes past 5 o'clock on the afternoon of August 4th the body of De Mann was found lying on the cement floor at the foot of the steps leading from the basement. The electric lights had been turned on; and there was testimony tending to show that five minutes before, when some of the workmen were going up the stairs to get their street clothing, the body was not there. No one saw the accident. De Mann was in his shirt sleeves; and his coat, vest, and dinner pail were afterwards found on the stage.

A committee of arbitration allowed compensation at the rate of $5.77 per week for a period of 300 weeks; and the employer brings the case to this court, urging:

*First.* That the claimant has not met the burden of proving that De Mann died as a result of a personal injury arising out of and in the course of his employment; and,

*Second.* That if he did die as a result of a personal injury arising out of and in the course of his employment, the amount of compensation allowed was excessive.

PERSON, J. (*after stating the facts*). It is true that the burden is upon the claimant to show that the de-

ceased met his death through a personal injury arising out of and in the course of his employment. And it is equally true that this burden is not sustained if an inference favorable to the applicant can be arrived at only by a guess. But, as was said by this court in *Parker* v. *Union Station Ass'n*, 155 Mich. 72 (118 N. W. 733):

"While it is true that proof must establish a probability, and where the testimony can be said to be as consistent with a theory that relieves a defendant from liability for the accident, as it is with one involving his liability, there can be no recovery, we have often held that circumstances shown may justify inferences which bring liability within the realm of probability, rather than leaving it a matter of conjecture merely."

De Mann's body was found at the foot of the stairway at the time the workmen were leaving the basement to get their clothing and dinner pails from the stage floor. To reach the stage floor those in the basement ordinarily ascended the stairway. Under these circumstances the most reasonable inference is that he fell from the stairway while on his way to the stage. He was in his shirt sleeves; and his coat, vest, and dinner pail were yet on the stage. It was also his duty to look after the tools, and those were kept on the stage. The coroner, a physician, testified:

"There were a few little minor abrasions, slight linear wounds on the top of the head, and a contusion on the back of the head on the left side over the occiput. After removing the skull I found a contusion over the temple. The wound on the top of the head was just a slight abrasion, inch or inch and a half long. * * * I should judge that the one on the top would be sufficient to stun him. * * *, He died from the result of the fracture."

It was certainly a reasonable inference that the fracture was caused by a fall from the stairway onto the cement floor, and that the fall came from hitting his

head against the crossbeam. No other cause for his death is even suggested, and in the report of the accident by the employer to the Industrial Accident Board it was said: "It is supposed that the injured fell from stairway."

It is undoubtedly true that the deceased was on his way from the basement to the stage for the purpose of getting his clothing, or to look after the tools, or both. There is no other apparent reason for his having been on the stairway. If his purpose was to look after the tools, that was clearly within the line of his employment. If he was after his clothing, that, also, was within the line of his employment. As was said in *Hills* v. *Blair*, 182 Mich. 20 (148 N. W. 243):

"It is held that the employment is not limited by the exact time when the workman reaches the scene of his labor and begins it, nor when he ceases, but includes a reasonable time, space, and opportunity before and after, while he is at or near his place of employment."

We also agree with the supreme court of New Jersey when it said:

"The preparation reasonably necessary for beginning work after the employer's premises are reached, and for leaving when the work is over, is a part of the employment. A workman is none the less in the course of employment because he is engaged in changing his street clothes for his working clothes, or in changing his working clothes for his street clothes. * * * The employment was not indeed the proximate cause of the accident, but it was a cause in the sense that but for the employment the accident would not have happened. The employment was one of the necessary antecedents to the accident." *Terlecki* v. *Strauss*, 85 N. J. Law, 454 (89 Atl. 1023), 86 N. J. Law, 708 (92 Atl. 1087).

And see *Sundine's Case*, 218 Mass. 1 (105 N. E. 433, L. R. A. 1916A, 318).

We think that the Industrial Accident Board was warranted in finding that the injury arose out of and in the course of his employment.

But the amount of compensation allowed by the Industrial Accident Board seems greater than the evidence justifies. The average annual earnings of the deceased must have been fixed by the board at $600 a year, in order to produce a compensation of $5.77 per week. The evidence in the case does not seem to show such an annual earning. The only testimony was that of a son of the deceased, who said:

"My father earned $2 a day at the Hydraulic Engineering Company; had worked for them for two years. He was steadily employed when they had work. I should judge he worked about nine months out of the year. When he wasn't working for the Hydraulic Company during the real hard months or weeks of the winter, he did not work at any other places. I don't know how much he laid off last winter. It might have been two months. He worked six days in the week."

From this it appears that the Hydraulic Engineering Company did not afford employment during the entire year, but only for ten months out of the year, at the best. Estimated according to the provisions of the statute as construed in *Andrejwski* v. *Wolverine Coal Co.*, 182 Mich. 298 (148 N. W. 684), the annual earnings of the deceased were not to exceed $520 a year. On this basis the allowance should have been at the rate of $5 per week for the term of 300 weeks.

The order of the Industrial Accident Board will therefore be reversed and set aside, and an order entered by the board in accordance with this opinion, but without costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.